### JULIA F. ROAK *vs.* JENNIE DAVIS.

Suffolk.    January 18, 1907. — February 28, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Equitable Restrictions.    Equity Jurisdiction,* To enforce restriction on land.

In order that an owner of land should be bound by restrictions, not contained in his deed or in those of his predecessors in title, which were imposed on other lots by a former owner of his land, it is necessary to show that when he bought the land he had notice of the restrictions and also to show that none of his predecessors in title since the restrictions existed bought without notice of them so as to convey a title free from restrictions.

Where a landowner, selling lots according to a plan which shows twenty-two lots adjoining and opposite each other on a certain street but contains nothing indicating restrictions, conveys four of the lots by deeds containing certain like restrictions, and gives another deed and a mortgage; and his successor in title gives a deed, containing restrictions which are similar to the former ones but differ in details, these conveyances do not show the adoption of a general scheme for the lots on the street shown on the plan which prevents the conveyance of the remaining lots on any terms which seem desirable to the owner, and it is immaterial whether or not purchasers of the remaining lots who take deeds without restrictions have notice of the restrictions in the deeds previously made.

LORING, J.    This is a bill by the owner of lot 6 on the plan printed on page 482 to enjoin the defendant, who is the owner of lots 21, 22 and 23 and of parts of lots 20 and 24, from erecting within one foot of the street lines two blocks of apartment houses, each for three families, on the ground that one Patrick Maguire, while owner of the whole tract, adopted a general scheme for its development which is violated by the erection of these houses.

The plaintiff's lot was conveyed to her by Patrick Maguire by a deed dated October 30, 1894.    This deed contained the following clause: " This conveyance is made . . . subject . . . to the following restrictions viz: No building other than a single dwelling house for one family and to cost not less than six thousand (6000) dollars exclusive of the cost of the land shall be erected on this lot.    The front line of the building shall be not less than fifteen (15) feet back from the Street; but porticoes,

bay windows and piazzas may project over said front line but not more than within six (6) feet of the Street. These restrictions shall continue till the year 1900." We assume that 1900 in the copy of this deed is a misprint for 1910.

Maguire seems to have died in 1896 or after, although the only witness who testified to his death said that he died in 1895.

The land afterwards conveyed to the defendant and other land in the neighborhood was devised or descended (it is stated both ways in the evidence) to his daughter Annie Maguire, who is

alleged in the bill to have conveyed to one Rudnick sixteen lots, to wit, lots 14 to 29, inclusive. It is also alleged in the bill that Rudnick, on February 19, 1906, conveyed to the defendant the lots and parts of lots here in question. These deeds were not put in evidence. It was assumed at the trial that they contained no restrictions, and we shall proceed on that assumption.

In proof of the allegation that Patrick Maguire in his lifetime adopted a general scheme for the development of this tract of land, the plaintiff introduced in evidence the plan, already referred to and printed above, which Patrick caused to be made in 1892, and deeds of three lots, to wit, lots 4, 9 and 11, dated

September 8, 1893, July 30, 1894, and May 7, 1895, respectively. All of these deeds contained the restrictions set forth in the deed to the plaintiff.

The plaintiff also introduced a deed by Patrick of lot 12, dated October 10, 1896, in which so far as the evidence goes there were no restrictions at all. In that deed it was stated that the land was conveyed " subject to the restrictions contained in " a mortgage deed to the Union Institution for Savings. But there was no evidence as to what, if any, restrictions were contained in that mortgage. The plaintiff also put in evidence a mortgage of one lot and deeds of two lots on another plan not made part of the record, which was assumed at the trial to have been a plan made in 1895 of the same territory ; and we shall proceed on that assumption.

This mortgage was dated January 22, 1896, and was signed by Patrick; and the deed signed by him was dated February 10, 1896. The other deed is dated October 17, 1898, and is executed by Annie Maguire. This mortgage and these two deeds also contain restrictions expiring in 1910. The restrictions in this mortgage and in these two deeds are similar but somewhat different from those in the deed to the plaintiff and in the other three deeds above referred to. The differences consist in requiring the cost of the house to be $5,000 in place of $6,000, in not forbidding porticoes, bay windows and piazzas to be built within six feet of the street line, and in allowing front steps to protrude into the reserved space in front of the houses. Further, in the Annie Maguire deed the set back is twenty in place of fifteen feet.

The plaintiff also put in evidence tending to show that Patrick orally promised the plaintiff that there would be as good houses on the other side of the street or, as the plaintiff's husband put it, that " I could take his word that those houses would be just as good on the opposite side of the street as what the house I was buying. I don't know as he said they would be restricted ; I don't know as he answered that question."

The plaintiff's evidence in addition consisted of the fact that sewers were laid in the street with Y branches for each, or for nearly each, lot ; and of general statements made by Patrick that he intended to cut up the land into lots suitable for single dwelling houses, and that it would be restricted to that. There

was also proof of a caveat in the registry of deeds by the owner of lot 3, dated June 24, 1901, giving notice of a bill in equity brought against Annie Maguire affecting the use of lots 13 to 19, on which bill a decree was entered at a time not stated, dismissing the bill.

On this evidence the judge who heard the case in the Superior Court entered a decree dismissing the bill, and the case is before us on an appeal from this decree on all the evidence without any finding of fact.

To make out her case here the plaintiff had to prove that Patrick Maguire or Annie Maguire, or both, had in fact put on the land not sold when Annie sold to Rudnick equitable restrictions which would be violated by the erection of the defendant's buildings, so that she was not at liberty to sell the unsold land free from those restrictions; and that Rudnick and the defendant took with notice of that fact.

If the judge believed the plaintiff's husband, Patrick Maguire refused to restrict the remaining land when he sold to the plaintiff, and told her that she would have to take his word for the opposite land having single houses on it. That would bring this case within the rule of *Dickinson* v. *Todd*, 172 Mass. 183, and similar cases.

But if we should find that Patrick intended to restrict this whole area and that he stated to some purchasers that he had that intention, the plaintiff has failed to make out a case here; and it is more satisfactory to consider this by reason of the fact that during the trial the judge intimated and the defendant's counsel conceded that the evidence tended to prove that fact. Passing by the difficulty of the statute of frauds arising from the fact that this was by word of mouth and the further difficulty that the evidence did not disclose just what these restrictions were to consist of, it is enough to say that this was not brought home to Rudnick and the defendant. We say to both Rudnick and the defendant, because if Rudnick took without notice he could and did convey his title to the defendant. And if Rudnick had taken with notice, the defendant would not take subject to the restriction if she took from Rudnick without notice.

The most that the plaintiff can claim here is that Rudnick

and the defendant are chargeable with notice of the five deeds and of the one mortgage made by Patrick and of the one deed made by Annie, and of the plans referred to therein. We do not find it necessary to decide whether Rudnick and the defendant were chargeable with notice of these deeds and plans. For if they were chargeable with notice of these deeds and plans they did not make out the adoption of a scheme by Patrick or Annie, or both.

As we have said, but one of those plans has been made part of the record before us. There is nothing on that plan which even indicates a general scheme of restrictions. On the contrary the plan, so far as it goes, indicates that the houses were not to be set back from the street lines.

The five deeds and one mortgage made by Patrick did not show the adoption of a general scheme which was binding on the land left unsold. Three of Patrick's deeds to other persons contained the restrictions found in his deed to the plaintiff. Patrick's mortgage and his other deed and the deed executed by Annie had similar but different restrictions; and the other deed of Patrick's so far as appears had no restriction at all. It seems needless to say that these conveyances do not show the adoption of a general scheme which prevented the unsold lots being conveyed on any terms which might seem to the owner desirable.

The case comes within *McCusker* v. *Goode*, 185 Mass. 607.

*Decree affirmed.*

*J. R. Murphy*, for the plaintiff.
*G. R. Swasey*, for the defendant.