MARTHA E. LOVELL & others *vs.* THE COLUMBIAN NATIONAL LIFE INSURANCE COMPANY & another.

Suffolk.   April 6, 1936. — May 27, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Equitable Restrictions.   Deed,* Construction.

A covenant in a deed by the owner of a tract of land in Boston bounded northerly by Commonwealth Avenue and southerly by Newbury Street, conveying the northerly part, that the grantor and his successors in title would erect only dwelling houses upon the southerly part, was found to have been made only for the benefit of the northerly part then conveyed and not as part of a general plan for development of the entire tract, and a suit by the owner of one lot in the southerly part against the owner of another lot therein to restrain use of the defendants' building other than as a dwelling house rightly was dismissed.

BILL IN EQUITY, filed in the Superior Court on November 28, 1932.

The suit was heard by *Donahue,* J., and a final decree dismissing the bill was entered by his order. The plaintiffs appealed.

*A. L. Brown,* (*D. E. Mayberry* with him,) for the plaintiffs.

*F. Adams,* (*M. DeW. Howe* with him,) for The Columbian National Life Insurance Company.

*S. A. Goodman,* for Economy Grocery Stores Corporation.

PIERCE, J.   This is a suit in equity against The Columbian National Life Insurance Company and the Economy Grocery Stores Corporation — the former being the owner, and the latter the lessee of a part, of premises situated at 297 Newbury Street, in Boston — to enjoin the defendants from permitting or carrying on a chain grocery store on the premises. The plaintiffs are the owners of premises situated at 293 and 301 Newbury Street, on either side of the defendants' premises, each being one lot removed therefrom.

The trial judge found the following material facts, the

most part being admitted by the defendants. In 1879, Caleb H. Warner and Charles F. Smith, trustees, owned a tract of land on Commonwealth Avenue between Gloucester and Hereford streets, and a tract in the rear of the same fronting on Newbury Street and separated from the Commonwealth Avenue land by a passageway in which Warner and Smith owned the fee. Between August 1, 1879, and June 18, 1880, the trustees made three separate conveyances of the Commonwealth Avenue tract, conveying to William D. Pickman three undivided sixth parts, and to Jacob C. Rogers one undivided sixth part and later two undivided sixth parts. In each of these deeds the fee in the northerly half of the passageway between the two tracts was conveyed with a reservation of the use to the grantors, their successors and assigns. These conveyances were subject to the restriction that no part of any building erected on the granted premises should project over the passageway. Each deed contained the following covenant: "And we, the said grantors for ourselves and our heirs, successors and assigns do further covenant with the said grantee, his heirs and assigns that no building other than dwelling houses and the usual buildings appurtenant thereto, including stables for private use only, shall be erected upon land now owned by us in the rear of the above granted premises and bounded on the east by the easterly line of the above granted premises extended, southerly by Newbury street, westerly by the westerly line of the above granted premises extended, and northerly by the passageway aforesaid and that no buildings erected upon said rear land shall project over the passageway aforesaid. It being, however, expressly provided, that this covenant shall run with the land affected thereby but the said grantors, their heirs, successors, representatives or assigns shall be under no liability by reason of this covenant save as they may be owners of said land or part thereof, and when any portion thereof shall be conveyed by them their liability shall cease as to the part so conveyed."

Between October 2, 1884, and November 11, 1887, by six separate quitclaim deeds, Warner and Smith conveyed

the lots in the Newbury Street tract respectively to Uriah H. Coffin, Louisa D. Edwards, Elizabeth Ridgway Post, Edwin B. Horn, George H. Edwards and Alden Avery. Each of those deeds contained a clause substantially in the following form: "subject to the restrictions, stipulations and agreements mentioned in the deed from these grantors to Jacob C. Rogers, recorded with Suffolk Deeds, libro 1495, folio 553 [the deed of the undivided two sixths], and in the deed from these grantors to William D. Pickman recorded as aforesaid, libro 1464, folio 250 [the deed of the three undivided sixth parts] and in the deed from these grantors to Jacob C. Rogers recorded as aforesaid, libro 1464, folio 251 [the first deed to Rogers of the one undivided sixth part] so far as any of said restrictions, stipulations and agreements concern the premises hereby conveyed."

The land of the plaintiff Lovell is part of the lot originally conveyed by Warner and Smith to Avery, and the deed to the plaintiff Lovell from her grantor, one Shirley C. Speed, "conveyed the land and building and the fee of the southerly half of the passageway in the rear; 'together with the benefit of and subject to all rights, easements, reservations, restrictions and agreements set forth or referred to in a deed to Alden Avery from Caleb H. Warner et al. Trustees, dated November 11, 1887, . . . recorded with Suffolk Deeds . . . so far as now in force and applicable.'" The land of the plaintiffs Magaw is next west to the lot originally conveyed to Coffin by Warner and Smith and is the lot originally conveyed to Louisa D. Edwards. The deed to the Magaws was made by one Mary F. Kett and contains the provisions that: "The premises are conveyed subject to and with the benefit of the easements and restrictions and agreements mentioned or referred to in a deed to one Gladys M. Crocker, recorded with Suffolk Deeds . . . in so far as now in force and applicable." * The conveyance to the Magaws was made June 24, 1926.

---

* From testimony by Thomas F. Kerrigan, Esquire, a conveyancer, which did not appear to be questioned by the defendants, the "restrictions and agreements" in this deed to Crocker were the same as those originally imposed by the deeds of Warner and Smith, trustees, quoted *supra*, page 474. — REPORTER.

The Newbury Street property which the defendant insurance company now owns was mortgaged to it on November 7, 1927, by Daniel A. McLaughlin. The mortgage deed recited that the premises were conveyed to the mortgagee "with the benefit of and subject to the restrictions, rights and party wall agreements imposed by deeds recorded with Suffolk Deeds . . ., so far as now in force and applicable." On November 19, 1930, the mortgagee "sold the property . . . pursuant to a power of sale . . . became the purchaser at the foreclosure sale, and on November 25, 1930, deeded the premises to itself." In July, 1927, the basement of the building mortgaged to the insurance company on November 7, 1927, was altered into a store, and since September, 1927, has been occupied by the defendant Economy Grocery Stores Corporation under a written lease from year to year.

On December 28, 1927, Daniel A. McLaughlin, the owner of the Newbury Street property originally conveyed to Edwin B. Horn, brought a bill in equity to have the restriction on his property declared to be no longer in force. The bill was taken for confessed against Mary K. Magaw among others of thirty-three defendants. Although no service was made on the plaintiff Lovell, she testified that she "followed" the case. As late as the spring of 1932, the present plaintiffs were informed by their attorneys that there were no restrictions against business on their properties. Early in 1932, when the plaintiff Lovell was contemplating changes in her premises so as to make them available for business purposes, she was informed by another Newbury Street property owner that there were restrictions against such use of her property, and that the restrictions applied also to the premises at 297 Newbury Street.

On November 28, 1932, the present bill of complaint was brought. Findings were made of the amount of damages caused by the carrying on of the store and of the character of the neighborhood. The trial judge found (1) that the plaintiffs could not recover since the restrictive covenant was a restriction not on use but on building; (2) that the plaintiffs could not recover for the reason that the restric-

tions were not for the benefit of the land owned by the plaintiffs, but were only for the benefit of the Commonwealth Avenue property; and (3) that the restrictive covenants in the deeds of Warner and Smith to Pickman and Rogers were not inserted pursuant to any general plan or neighborhood scheme of development, but were inserted solely for the benefit of the land conveyed to Pickman and Rogers and could be enforced only by their successors in title.   The trial judge then ruled that the plaintiffs were entitled neither to damages nor to injunctive relief, and their bill was dismissed by a final decree.   The plaintiffs appealed from the final decree.

The principal questions argued by the parties are (1) whether the restriction is one the plaintiffs can enforce; (2) if so, whether there has been a violation of the restriction by the defendants' use of the basement for business purposes; (3) whether the plaintiffs are barred by laches from obtaining any relief.

In a case covering equitable restrictions it is settled that the burden of proof is on the party claiming the benefit of a restriction to show that it is appurtenant to his land.   *Lowell Institution for Savings* v. *Lowell*, 153 Mass. 530, 532.   *Stewart* v. *Alpert*, 262 Mass. 34, 38.   *Snow* v. *Van Dam*, 291 Mass. 477, 485.   As to the force to be given to the language used and to the point that any doubts will be resolved in favor of freedom from restrictions, see *Smith* v. *Bradley*, 154 Mass. 227, 231; *Boston Baptist Social Union* v. *Boston University*, 183 Mass. 202, 205; *Davidson* v. *Sohier*, 220 Mass. 270, 272; *Stone* v. *Pillsbury*, 167 Mass. 332, 337; *American Unitarian Association* v. *Minot*, 185 Mass. 589, 595.

In the case at bar there is no contention that the burden of the restrictions was not, by the various instruments, validly attached to the Newbury Street property in favor of the Commonwealth Avenue property.   The controversy is as to whether the benefits of the restrictions attached to each parcel of the Newbury Street property, especially as to those now owned by the plaintiffs, so as to enable the owner of each parcel to enforce the restrictions against the owner of every other parcel of that property.   To support

their contention the plaintiffs must show from the terms of the grants, or from the situation and surrounding circumstances, that it was intended by the grantors that such benefit should attach to the lands owned by the plaintiffs. *Beals* v. *Case*, 138 Mass. 138, 140. *Bessey* v. *Ollman*, 242 Mass. 89, 91. *Allen* v. *Massachusetts Bonding & Ins. Co.* 248 Mass. 378, 383. *Hill* v. *Levine*, 252 Mass. 513, 516, 517. *Snow* v. *Van Dam*, 291 Mass. 477, 480. The plaintiffs seek to bring their case within the case of *Allen* v. *Massachusetts Bonding & Ins. Co.* 248 Mass. 378, wherein it is said at page 383: "It is plain that there was on the part of the Commonwealth a general scheme of real estate development of considerable magnitude as to the Back Bay district. It covered a large area. It was designed to create an attractive neighborhood given over in general to residential uses. Purchasers of lots in this district hardly could have been attracted for establishing fine homes unless assured of a proprietary right to insist that their neighbors conform to the same restrictions by which they were themselves bound." In a word, the plaintiffs seek to bring the case at bar into that class of cases where all the lots in a tract are sold subject to restrictions, under a general scheme designed to achieve substantial uniformity in building or use on every lot in the tract, and where the existence of such a scheme gives rise to the inference of an intention to attach the benefit of the restrictions to each lot as against every other lot in the tract; see *Snow* v. *Van Dam*, 291 Mass. 477, where the question of how such a scheme is shown is discussed with a citation of authorities. In the case at bar the restrictions were created by a plan different from that employed in *Sanborn* v. *Rice*, 129 Mass. 387, and *Storey* v. *Brush*, 256 Mass. 101. Here the grantors promised for themselves, their heirs, successors and assigns, to the grantees of the Commonwealth Avenue property that they, the grantors, would not erect business buildings on the Newbury Street property. The grantees of the Commonwealth Avenue property were not subjected to similar restrictions on their property. Subsequently, as the original owners sold their Newbury Street property, they, in accordance with their agreements

to the Commonwealth Avenue grantees, subjected the New-
bury Street property to the building restrictions. The re-
strictions in the deeds of the Newbury Street property could
be ascertained only by referring to the covenants contained
in the Commonwealth Avenue deeds.

The plaintiffs' argument as to inferring a general plan
covering both tracts of land originally owned by Warner
and Smith cannot prevail. There was no declaration in any
form by the grantors that such was their intention. On the
contrary, it is more readily inferable from the various docu-
ments that the intent of the grantors was to attach a bene-
fit to the Commonwealth Avenue lots and a burden only
on the Newbury Street lots. No such general plan can be
inferred from any uniformity of restrictions covering the
lots in both tracts because no restrictions, such as were at-
tached to the Newbury Street lots, were attached to the
Commonwealth Avenue lots. *Donahoe* v. *Turner*, 204 Mass.
274, 275, 276. *Webber* v. *Landrigan*, 215 Mass. 221, 222.
It follows that there was no general plan or scheme shown
covering both tracts. It may be true, if the Newbury
Street lots alone had been sold with restrictions against
business buildings stated in the deeds, that the plaintiffs
might have prevailed in their argument that these lots were
sold under a general scheme, but the transactions with refer-
ence to the Newbury Street lots were inseparably connected
with the Commonwealth Avenue conveyances. Indeed,
the restrictions were not even set forth in terms in the New-
bury Street conveyances, these conveyances reading that
the Newbury Street lots were subject to restrictions and
agreements set forth in the deeds of the Commonwealth
Avenue properties, and the various documents must be read
together. The language used in subsequent deeds of the
Newbury Street lots, to the effect that the subsequent
grantees were to have the benefit of any easements created
by the deeds to the original grantees, obviously could not
create any rights additional to those given the original
grantees of the Newbury Street lots. *Sargent* v. *Leonardi*,
223 Mass. 556, 558. *Snow* v. *Van Dam*, 291 Mass. 477, 480.

The findings of the trial judge, based on documentary

evidence and on evidence of the surrounding circumstances, that the benefit of the restrictions did not attach to the land now owned by the plaintiffs, are not clearly wrong and will not be disturbed. *Maclary* v. *Morgan,* 230 Mass. 80, 82. It seems clear that the plaintiffs have failed to sustain the burden of showing that the benefit of the restrictions attached to their lands. *Badger* v. *Boardman,* 16 Gray, 559. *Sharp* v. *Ropes,* 110 Mass. 381, 385. *Bessey* v. *Ollman,* 242 Mass. 89, 91, 92. It is not necessary to consider other questions in controversy argued by the parties.

*Decree affirmed with costs.*